CJ-2020-3405
Stallings

*104709 5785*

**IN THE DISTRICT COURT OF OKLAHOMA COUNTY**
**STATE OF OKLAHOMA**

FILED IN DISTRICT COURT
OKLAHOMA COUNTY

JUL 23 2020

RICK WARREN
COURT CLERK
42_____

| | |
|---|---|
| QUINTESSA LLC, d/b/a QUINTESSA MARKETING, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) Case No. **CJ-2020-3405** ) |
| ERB LEGAL INVESTMENTS, LLC, d/b/a THE BRADLEY LAW FIRM | ) ) ) |
| Defendant. | ) ) |

## PETITION

COMES NOW the Plaintiff, Quintessa LLC, d/b/a Quintessa Marketing ("Plaintiff"), and for its causes of action against Defendant, ERB Legal Investments. LLC, d/b/a/ The Bradley Law Firm, alleges and states as follows:

### PARTIES, JURISDICTION, AND VENUE

1.    Plaintiff is a domestic limited liability company headquartered in Oklahoma City, Oklahoma County, Oklahoma.

2.    Defendant is a foreign limited liability company registered in the State of Missouri and headquartered in Saint Louis, Missouri.

3.    The Oklahoma County District Court has subject matter jurisdiction over the transactions and occurrences stated herein and personal jurisdiction over the parties hereto.

4.    Venue is proper in Oklahoma County District Court pursuant to 12 O.S. § 187.

### FIRST CAUSE OF ACTION — BREACH OF CONTRACT

Plaintiff adopts and restates the allegations in Paragraphs 1-4 above and further states:

5.    On April 20, 2020, Plaintiff and Defendant entered into a written contract (hereinafter the "Contract") whereby Plaintiff promised to provide personal injury case leads to

Defendant, and Defendant promised to pay for same at an agreed-upon price. *See* Contract, **Exhibit 1**.

6.     The Contract called for Defendant to make an initial "Campaign" payment to Plaintiff, after which Plaintiff would begin sending case leads to Defendant and charging Defendant for same. *Id.*

7.     The Contract permitted Defendant to "disengage" or turn down leads within a set time frame, but only for specified reasons set forth in the Contract.

8.     Moreover, the Contract required Defendant to disengage leads through Plaintiff's online web portal in order to not be charged for the lead.

9.     The parties operated under their agreement for approximately three months, with Plaintiff sending Defendant hundreds of leads.

10.    Following an internal audit, Plaintiff learned that it had sent Defendant far more leads than Defendant has paid for.

11.    Further, Defendant failed to properly or timely disengage at least 32 leads that it has not paid for (and thus owes Plaintiff for).

12.    Plaintiff has demanded payment from Defendant for the leads it failed to properly or timely disengage, but Defendant has refused to make such payment.

13.    Defendant's failure to pay Plaintiff for leads it has not properly disengaged constitutes a breach of the parties' Contract.

14.    As a result of Defendant's breach, Plaintiff has incurred damages in an amount in excess of $50,000.00.

## SECOND CAUSE OF ACTION—ACTUAL/CONSTRUCTIVE FRAUD

Plaintiff adopts and restates the allegations in Paragraphs 1-14 above and further states:

15.     During the course of the parties' contractual relationship, Plaintiff sent Defendant various leads which Defendant purportedly "disengaged" or turned down through Plaintiff's online web portal.

16.     In disengaging or turning down various leads through Plaintiff's online web portal, Defendant (through its agents Edward Ryan Bradley and Rachel Schmitt) falsely represented to Plaintiff that these leads were being disengaged/rejected because there was either too little property damage ("under $1,500.00"), or because the potential client was "unresponsive."

17.     Following an internal audit, Plaintiff discovered that Defendant did not *actually* disengage these leads/clients. In reality, Defendant only disengaged the leads through Plaintiff's online web portal so as to not be charged for the leads.

18.     However, Defendant continued to pursue multiple leads it had "disengaged" (i.e., continued representing the clients associated with such leads and even settled claims for some of these clients).

19.     Defendant falsely represented to Plaintiff that these leads had been "disengaged" with the intent that Plaintiff rely on such representations and not charge Defendant for the leads.

20.     Plaintiff did, in fact, rely on Defendant's false representations by crediting or refunding the lead fees back to Defendant's Campaign and not charging Defendant for the leads.

21.     Plaintiff has suffered substantial damages as a result of its reliance on Defendant's false representations.

22.     Specifically, Plaintiff has lost in excess of $30,000.00 in lead fees as a direct result of Defendant's fraudulent representations and actions.

### EXEMPLARY DAMAGES

Plaintiff adopts and restates the allegations in Paragraphs 1-22 above and further states:

23.     Defendant's fraudulent acts and omissions, as set forth above, were malicious, oppressive, and done in reckless disregard of Plaintiff's rights.

24.     As a direct result of Defendant's oppressive acts and reckless disregard for Plaintiff's rights, Plaintiff has suffered substantial damages.

25.     Plaintiff is therefore entitled to punitive damages in an amount sufficient to deter similar behavior in the future.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendant in an amount in excess of $75,000.00, including attorney's fees, costs and interest, and for all such further relief as the Court deems just and equitable.

Respectfully submitted,

Benjamin M. McCaslin, OBA #32826
STRIDE LAW, PLLC
7919 Mid America Blvd, Ste. 230
Oklahoma City, OK  73135
Ph: (405) 513-4725
Fax: (405) 562-5646
**ATTORNEY FOR PLAINTIFF**

EXHIBIT 1

# QUINTESSA MARKETING

BULK MARKETING, FULL SERVICE PLATFORM AND GENERAL TERMS OF SERVICE

This agreement is entered into as of ("the effective date"), between you, The Bradley Law Firm ("you" or "your") and QUINTESSA MARKETING and its affiliates (collectively "QUINTESSA") for the services ("services") described below.

## Details of Services Provided by Quintessa Marketing:

Beginning on the effective date, 04/20/2020, QUINTESSA MARKETING will begin to deliver Personal Injury leads in Missouri to The Bradley Law Firm.

QUINTESSA adheres to required disclaimers including Missouri's on all owned digital properties used to generate leads and do not include any specific attorney information.

QUINTESSA MARKETING will provide pre-qualified leads to The Bradley Law Firm. Prompt lead delivery is provided via email, portal notification and live call transfer.

| Lead Tier | Description | Price | Territory |
|-----------|-------------|-------|-----------|
| Tier 1 | Motor Vehicle Accident | $2,000 per Plaintiff | Missouri |
| Tier 2 | Commercial Policy/Motor Vehicle Accident Injury | $4,200 per Plaintiff | Missouri |

## Terms and Cancellation:

Initial

The Marketing Campaigns are pre-funded with an initial payment of $50,000. Tier 1/Tier 2 leads are deducted from the funded amount at the time of lead delivery.

Quintessa tracks and accounts for the funds each law firm has in its campaign at all times. Your law firm has the ability to see how much money remains in its campaign at any given time.

Campaign funding balance must remain above 10%. Once your balance reaches 10%, Quintessa will notify you of additional funding requirements to continue your campaign.

The Bradley Law Firm will have six full days (at least 144 hours) to turn down or disengage the lead for approved reasons described below unless otherwise agreed upon in writing by Quintessa Marketing. At 12am on the seventh day, leads will not be eligible for disengagement. Leads that are turned down or disengaged for the approved reasons described in this agreement will be credited back to your Campaign balance once Quintessa has verified and may be subject to internal audit which typically takes 5 days.

### Turndowns and Disengagements

Approved reasons for turning down or disengaging a lead, unless otherwise agreed by Quintessa Marketing are as follows:
- Insured At fault
- Property Damage under $1,500
- Defendant Uninsured and no PC UM
- No medical treatment within 14 days of injury

Leads that you turn down or disengage, must be done by using the Quintessa Marketing portal in order to receive credit back to your campaign.  Leads may no longer be pursued by The Bradley Law Firm or its affiliate referral firms once the lead has been disengaged.

Quintessa Marketing reserves the right to cap MVA disengagements at a rate of 45%

Service Fee: Quintessa also provides call center intake services and reporting for your marketing campaign at a rate of 2% of all funding.  Service fee is waived if payment is made via ACH.

By Signing this Agreement, I understand and agree to the Services Provided and the Terms of this Agreement.

_____
Signature

Lauren Mingee CEO & Owner
Quintessa Marketing

_____
Printed Name

Lauren Mingee CEO & Owner
Quintessa Marketing

_____
Signature

Licensee
The Bradley Law Firm

_____
Printed Name

Licensee
The Bradley Law Firm

4 - 21-20
_____
Date

53777 (MO)
_____
Bar ID Number